# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

EMPIRE CORVETTE OF AMERICA,
INC.,

      **Plaintiff,**

v.                                                     Case No:   6:18-cv-26-Orl-22DCI

JUST TOYS CLASSIC CARS, LLC,

      **Defendant.**

## ORDER

This cause comes before the Court on Defendant Just Toys Classic Cars, LLC's ("Just Toys") Motion to Dismiss the Second Amended Complaint for failure to state a claim (Doc. 18). Plaintiff Empire Corvette of America, Inc. ("Empire") filed suit alleging claims against Just Toys for civil theft, fraud, conversion, unjust enrichment and violation of the Florida Deceptive and Unfair Trade Practices Act arising out of the consignment of a 1970 classic automobile to Just Toys in Florida to sell for a minimum price of $62,000. Empire alleges jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332; thus, the Court will apply Florida law to Empire's tort and statutory claims. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law.").

### *Background*

Just Toys, which operates a motor vehicle dealership in Orange County, Florida, represented to Empire that it could sell a 1970 GTO Judge (the "Vehicle") owned by Empire[1] on

---

[1] No copy of the title to the Vehicle listing the owner is provided. However, on a motion to dismiss, the Court must accept as true all factual allegations set out in Empire's Second Amended Complaint. *Randall v. Scott*,

a consignment basis.² Doc. 13 ¶¶ 8-10. Empire delivered the 1970 GTO Judge to Just Toys to be sold on consignment. *Id*. ¶ 10. At the time of delivery of the Vehicle, Just Toys prepared a form contract that Empire contends was ambiguous³ and did not accurately reflect the parties' agreement. *Id*. ¶ 11. Just Toys acknowledged that the form contract did not reflect the agreement as it related to the GTO Judge and indicated a new agreement would be provided, however, no such agreement was ever executed by the parties. *Id*. ¶ 12; Doc. 13-2. During the time Just Toys had the Vehicle, it apparently received an offer of $30,000 for the GTO Judge, which offer was rejected by Empire as too low; Empire stated that the minimum acceptable amount was $62,000. Doc. 13 ¶¶ 13-14. A few months later, Just Toys advised Empire it had an offer to purchase the GTO Judge for $60,000, and was again advised by Empire that the offer was rejected because it was below the $62,000 minimum acceptable amount. *Id*. at ¶ 15, Doc. 13-3. Just Toys subsequently informed Empire that it had a purchaser for the Vehicle at a purchase price of $62,000, and needed the Vehicle's title delivered to complete the sale. Doc. 13 ¶ 16, Docs. 13-4, 13-5. Empire delivered the title to Just Toys in reliance on Just Toys' assurance that a purchaser had been procured for $62,000 and that the sales proceeds would be delivered to Empire upon conclusion of the sale. Doc. 13 ¶ 18. Although Just Toys had possession of the title and vehicle and claimed to have a purchaser for the vehicle, the funds from the sale were never delivered to Empire. *Id*. ¶ 19. Instead, Empire's calls for updates on the status of consummation of the sale and payment for the sale were not returned; Just Toys only sporadically replied to inquiries by text and email. *Id*. ¶ 20.

---

610 F.3d 701, 705 (11th Cir. 2010).
 ²Empire also delivered a second vehicle (a Trans Am) which was eventually retrieved and is not at issue in this case.
 ³Empire contends that the form identified two vehicles, but only the price for the second vehicle (a Trans Am), and not the 1970 GTO Judge, was included in the form agreement. Doc. 13-1. During the same period, Just Toys was in possession of the Trans Am, but had not communicated any offers for the purchase of that vehicle. Doc. 13 ¶ 21.

After Just Toys had held the Vehicle for several months and when no bona-fide sale appeared to be taking place, Empire informed Just Toys that it intended to retrieve its Vehicle. *Id.* ¶ 22, Doc. 13-6. However, Just Toys advised Empire it could not retrieve the Vehicle unless Empire paid Just Toys the sum of $840.00 as a "marketing reimbursement"; Empire wired the funds to Just Toys even though it did not believe it was indebted to Just Toys. Doc. 13 ¶¶ 23-24. However, when Empire sent a transport vehicle to Just Toys' business location to retrieve the Vehicle, Just Toys refused to deliver the GTO Judge, even though the Vehicle was located on the premises and clearly visible.[4] *Id.* ¶¶ 25-27. Just Toys indicated the Vehicle was sold and would not release it to Empire. *Id.* ¶ 27, Doc. 13-7. Empire sent a demand letter to Just Toys for return of the vehicle or delivery of the sale proceeds. Doc. 13 ¶ 28, Docs. 13-8 & 13-11. However, Just Toys refused to return the Vehicle, alleging it had been sold and providing a bill of sale as evidence of the purported sale. Doc. 13 ¶ 28, Doc. 13-9 (Bill of Sale). Even though Just Toys contends the Vehicle was sold, no proceeds have ever been delivered to Empire despite its demands. Doc. 13 ¶ 30-31.

Empire filed suit against Just Toys on January 5, 2018, and following two Orders to Show Cause (Docs. 6, 11) regarding its pleadings of diversity subject matter jurisdiction, Empire amended its allegations. The operative Second Amended Complaint (Doc. 13) was filed on February 12, 2018. Just Toys filed a Motion to Dismiss for failure to state a claim (Doc. 18), and Empire filed its Response on March 13, 2018. Doc. 19.

### *Standard of Review*

For purposes of deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. *Randall v. Scott*, 610

---

[4] Just Toys did allow Empire to retrieve the other consigned vehicle, the Trans Am. Doc. 13 ¶ 25.

F.3d 701, 705 (11th Cir. 2010). "Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). However, the plaintiff's complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Mills v. Foremost Ins. Co*., 511 F.3d 1300, 1303 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, the Court is not required to accept as true a legal conclusion merely because it is labeled a "factual allegation" in the complaint; it must also meet the threshold inquiry of facial plausibility. *Id.*

Generally, a Rule 12(b)(6) motion is limited to the face of the complaint and any attachments. *Brooks v. Blue Cross & Blue Shield of Fla., Inc*., 116 F.3d 1364, 1369 (11th Cir. 1997). In ruling on a Rule 12(b)(6) motion to dismiss, the Court may consider an exhibit "in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Financial Sec. Assur., Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284 (11th Cir. 2007). The court need not convert the motion to dismiss into one for summary judgment. *Brooks*, 116 F.3d at 1369. Additionally, the court may consider matters of which the court may take judicial notice. *Tellabs v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 323, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007).

*Analysis*

Empire alleges claims for conversion, unjust enrichment, fraud, violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and civil theft pursuant to Florida Statute § 772.11. Doc. 13. Just Toys moves for dismissal of all of Empire's claims, arguing the exhibits attached to the Second Amended Complaint show Just Toys' contract regarding the Vehicle was with an individual named Ryan David Payne, not Empire, which contradicts Empire's allegations and precludes Empire from alleging sufficient facts to state a cause of action for relief.

Empire responds that Just Toys' Motion to Dismiss is an attempt to direct the focus of the case away from "the theft, deceptive acts, and fraud committed" by Just Toys. Empire argues that it has pled sufficient facts in order to establish that Just Toys took an automobile belonging to Empire, promised to provide compensation for it, induced Empire into delivering the title, and subsequently refused to provide the monies promised or return the automobile. It contends that Just Toys' Motion to Dismiss fails to identify a critical element of any particular count which is missing; thus, Empire declined to cite or discuss the elements of the various claims in its responsive memorandum. Instead, Empire argues that Just Toys is attempting to recast Empire's claims in terms of a breach of contract in an effort to mask its misappropriation of the Vehicle. However, Empire argues, it chose not to assert a breach of contract claim in the Second Amended Complaint because the alleged "contract" drafted by Just Toys is not an accurate reflection of any "agreement" or "meeting of the minds" of the parties, but is no more than an ambiguous form contract, and it was attached to the Second Amended Complaint merely to give context to the parties' various discussions. *See* Doc. 13 ¶¶ 11-12. Empire argues that each of the claims it did assert is based on its allegation that Just Toys converted or stole Empire's Vehicle.

Florida courts have generally recognized that, when parties are engaged in a contractual dispute over the amount owed and no fraud is involved, no civil theft or conversion can occur.

*Pathway Fin. v. Miami Int'l Realty Co.*, 588 So. 2d 1000, 1004 (Fla. 3d DCA 1991) (citing *Rosen v. Marlin*, 486 So.2d 623 (Fla. 3d DCA), *rev. denied*, 494 So.2d 1151 (Fla. 1986)); *Douglas v. Braman Porsche Audi, Inc.*, 451 So.2d 1038 (Fla. 3d DCA 1984) (where jury found that bank had not committed fraud or misrepresentation on the plaintiffs, civil theft or conversion could not have occurred); *but see Connecticut Gen. Life Ins. Co. v. Jones*, 764 So. 2d 677, 681 (Fla. 1st DCA 2000) ("The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract.").

Empire alleges in the Second Amended Complaint that the parties have no agreement: "Just Toys acknowledged that the form contract did not reflect the agreement as it related to the GTO Judge and indicated a new agreement would be provided, however, no such agreement was ever executed by the parties." Doc. 13 ¶ 12. The pertinent exhibit attached to the Second Amended Complaint is a March 10, 2017 form contract drafted by Just Toys which identifies next to "name:" Ryan David Payne, but the written name of the "owner" and the "signature of owner" are completely illegible. Doc. 13-1. Additionally, the document is not clear on its face that it applies to the 1970 Judge GTO. Under the "description of Vehicle," no vehicle identification number ("VIN #") is listed, no "model" is listed, the year is listed as "1970-80" and the "Make" is basically illegible.[5] Doc. 13-1. One of the (unverified, unauthenticated, unattributed[6]) text messages attached to the Second Amended Complaint indicates that more than one car may have been listed on the March 10, 2017 form contract (Doc. 13-1)—which referred to "vehicle" in the singular— and the response allegedly from a Just Toys' representative was: "I will fill out the agreement and

---

[5] One of the words in the blank *may* begin with a "J" but the remainder is illegible.
[6] Atop the messages it reads "Bob Classic Cars Orlando," which is not listed as a party to the case.

email you [it]" and "all you have to do is sign and email back," plausibly acknowledging that the agreement did not cover the terms of the consignment for the 1970 GTO Judge. Doc. 13-2. Empire alleges that no new agreement specifically covering the GTO was ever reached. Thus, Empire has declined to plead a breach of contract claim. Yet, Empire has alleged that it is the owner of the Vehicle and has pleaded claims for conversion, civil theft, unjust enrichment, fraud, and FDUTPA for Just Toys' failure to return the Vehicle or the sales proceeds.

However, even in the absence of a written consignment contract, a consignee such as Just Toys has a common law duty to account for its handling of the consignor's items entrusted to it. Under Florida law, a consignment relationship is one in which one party, the consignor or principal, transfers certain goods to another party, the consignee or factor, who undertakes to sell the goods on the consignor's behalf in exchange for a commission on the sale. *Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1312 (11th Cir. 2014) (citing *Gadsden Cty. Tobacco Co. v. Corry*, 103 Fla. 217, 137 So. 255, 257 (1931)). The consignee is generally in the business of selling such goods, and usually sells consigned goods under his own name. *Id*. The consignor retains title to the goods, however, and thus the consignee is best understood as a type of bailee. *Id*. Consignment relationships promote market efficiency by allowing persons who have goods, but lack the expertise necessary to attain the best price for those goods, to benefit from the consignee's superior experience and connections in the particular market. *Id.* Thus, under Florida law, the consignment relationship imposes some of the duties of a fiduciary, such as the duty for the consignee to account to the consignor for its sales of consigned goods. *Id.*

The Eleventh Circuit has explained that a consignee has the common-law duty to account to the consignor to keep complete and accurate records, and the consignor has the right to review those records, even when a contract exists between the parties:

> The essential circumstances under which Florida law imposes fiduciary obligations—where one party delegates power to another to carry out a specific task

on his behalf, and in so doing, reposes significant trust and confidence in the other—are inherent in a consignment relationship. The relationship is designed to place both the consignor and the consignee in a better position than either could attain separately. The consignor benefits by being able to sell his goods for a higher price than he would otherwise be able to secure, and the consignee benefits by receiving a commission he would not otherwise have received and by bolstering his reputation as a superior vendor of the type of goods consigned.

But this mutually beneficial result can only be achieved with the exercise of significant trust by the consignor. A consignor must not only entrust possession and control over his goods to the consignee, but also trust the consignee to sell his goods for a fair price and remit the proceeds (less a commission) to him. Furthermore, because a consignee is not tasked with holding the property entrusted to him and returning the same property to the consignor at a later date, but rather with disposing of the property and returning something else (the fungible proceeds of the sales of the goods) to the consignor, the need to impose a fiduciary obligation to account becomes particularly apparent.

It is little wonder, then, that while not always expressly identified as such, courts from around the country have long imposed on consignees certain of the duties of fiduciaries. *See, e.g., Ferguson v. Porter*, 3 Fla. 27, 30 (1850) (imposing duty on consignee to follow principal's instructions); *Cusick v. Phillippi*, 42 Wash.App. 147, 709 P.2d 1226, 1230 (1985) (noting that "[t]he standard of care of a [factor] has not been expressed in fiduciary terms in Washington, but certain duties have been recognized" including the duty "to adhere faithfully to all instructions" and "the rule requiring open disclosure and full accounting."); *see also Union Stock–Yards Nat'l Bank v. Gillespie*, 137 U.S. 411, 420–21, 11 S.Ct. 118, 121, 34 L.Ed. 724 (1890) ("It cannot be doubted that an element of a fiduciary nature enters into the obligation of the factor. . . . [T]here is a reliance of a principal on his agent, a confidence that the agent will do as his principal directs, and be loyal to the duties springing from such relation.").

Notable among these duties is the consignee's obligation to render a true and accurate account of his stewardship of the consignor's goods. *E.g., Wilson v. Burch Farms, Inc.*, 176 N.C.App. 629, 627 S.E.2d 249, 259 (2006) ("After selling the goods, the consignee must account to the consignor with the proceeds from the sale."); *Cusick*, 709 P.2d at 1230; 24A Fla. Jur.2d Factors and Commission Merchants § 20 (2011).

Furthermore, it has long been recognized that a court-directed accounting is warranted if a consignee disclaims his or her duty to account. *See generally Wilson v. Duncan*, 92 Fla. 470, 112 So. 48 (1926) (per curiam); *see also State ex rel. Cockrum v. Southern*, 229 Mo.App. 749, 83 S.W.2d 162, 164 (1935) ("It is well settled that [a principal-factor] relationship is a fiduciary one and constitutes the factor a quasi trustee for the principal and a suit in equity against the factor for an accounting may be brought when the facts warrant a suit for an accounting."); *Mackenzie v. Johnston*, (1819) 56 Eng. Rep. 742; 35 C.J.S. Factors § 62 (2009). In fact, as one distinguished scholar recognized, a disputed consignment relationship

> is a paradigmatic case for an accounting. See Christopher C. Langdell, *A Brief Survey of Equity Jurisdiction* (pt. 4), 2 Harv. L.Rev. 241, 260 (1889) ("The largest and most important class of persons, however, against whom [an equitable accounting] will lie, are agents who make it their business . . . to receive the property of others into their possession for the purpose of selling it. . . . Agents of this class [include] factors or commission merchants."). . . . As a consignee, [it] had a fiduciary obligation to account for its handling of [the consignor's] parts. The contract between the parties contained no provision altering or abridging this common-law duty; in fact, both the [consignment services agreement] . . . explicitly spell[s] out [the consignee's] duty to keep complete and accurate records, and [the consignor's] right to review those records.

*Id*. at 1313 (holding that court-ordered accounting was appropriate remedy under Florida law for consignee's breach of its reporting and accounting obligations under consignment agreement, even though consignor could obtain discovery in its breach of contract suit against consignee, where consignee retained possession and control of consignor's parts, and consignee's machinations prevented consignor from obtaining requisite information to prove damages). At a minimum, Empire can seek the remedy of an accounting based on the common law duty Just Toys has to provide an accounting regarding the consignment to the consignor.

    *A. Conversion*

Just Toys argues that Empire cannot prevail on the conversion claim because, based on the agreement attached to the Second Amended Complaint, Empire has no right to the vehicle or the proceeds from the sale and the agreement attached to Plaintiff's complaint shows that Plaintiff conferred no benefit on Just Toys. "Conversion is an 'act of dominion wrongfully asserted over another's property inconsistent with his ownership therein.'" *United Techs.*, 556 F.3d at 1270 (quoting *Thomas v. Hertz Corp.*, 890 So.2d 448, 449 (Fla. 3d DCA 2004); *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So.2d 1157, 1160–61 (Fla. 3d DCA 1984) (defining conversion as "an unauthorized act which deprives another of his property permanently or for an indefinite time"). The tort "may occur where a person wrongfully refuses to relinquish property to which another has the right of possession," and it "may be established despite evidence that the

defendant took or retained property based upon the mistaken belief that he had a right to possession, since malice is not an essential element of the action." *United Techs.*, 556 F.3d at 1270 (quoting *Seymour v. Adams*, 638 So.2d 1044, 1047 (Fla. 5th DCA 1994)). "[W]here a person having a right to possession of property makes demand for its return and the property is not relinquished, a conversion has occurred." *Senfeld,* 450 So.2d at 1161. The question of whether a vehicle has been the subject of a conversion is a factual one based on the distinct circumstances of each individual case. *Hertz Corp. v. Jackson*, 617 So.2d 1051, 1054 (Fla.1993); *Ming v. Interamerican Car Rental, Inc.*, 913 So.2d 650, 654 (Fla. 5th DCA 2005). "Money may be the subject of a conversion only where 'it consists of specific money capable of identification.'" *Kee v. National Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990) (citing *Belford Trucking Co. v. Zagar*, 243 So.2d 646, 648 (Fla. 4th DCA 1970)). "Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where the wrongful possession of such property is obtained." *Belford*, 243 So.2d at 648. If Just Toys has received the proceeds from the sale of the Vehicle ($62,000) as alleged, then the sales proceeds will be "capable of identification."

Empire alleged in the Second Amended Complaint that it owns the Vehicle and had arranged with Just Toys to sell the Vehicle on a "consignment basis." *Id.* at ¶ 9. Empire further alleges that, despite Just Toys' communicating it had sold the Vehicle, Empire has never received payment for the sale of the Vehicle. *Id.* at ¶ 60. Empire sent a demand letter to Just Toys for return of the Vehicle or delivery of the sale proceeds. *Id.* ¶ 28, Docs. 13-8, 11. However, Just Toys refused to relinquish the Vehicle, alleging it had been sold and providing a bill of sale as evidence of the purported sale. *Id.* ¶ 28, Doc. 13-9. Even though Just Toys informed Empire the Vehicle was sold, no proceeds have ever been delivered to Empire despite its demands. *Id.* ¶ 30-31.

Empire having alleged its ownership of the Vehicle and Just Toys refusal to relinquish it or the sales proceeds, states a plausible claim for conversion. *Cf. Prou v. Giarla*, 62 F. Supp. 3d 1365, 1380 (S.D. Fla. 2014) (holding that plaintiff stated a claim where he asserted that eleven of his art works were sold pursuant to a consignment agreement, he had never received full payment for the sold works, and the art dealer-consignee "still intend[ed] to exercise ownership" over them). Taking the allegations as true and viewing them in light most favorable to Empire, the Court finds that Empire alleges sufficient facts to state a claim for conversion, and Just Toys' 12(b)(6) Motion to Dismiss will be denied as to Empire's conversion claim (Count IV).

B. Civil theft

To state a claim for civil theft under Florida law, Florida Statute § 772.11(1), Empire must allege an injury resulting from a violation by Just Toys of the criminal theft statute (Fla. Stat. § 812.014). To do this, Empire must allege that Just Toys (1) knowingly (2) obtained or used, or endeavored to obtain or use, Empire's property with (3) "felonious intent" to (4) either temporarily or permanently deprive Empire of its right to or a benefit from the property or appropriate the property to Just Toys' own use or to the use of any person not entitled to the property. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (citing Fla. Stat. §§ 772.11 and 812.014(1) (criminal theft statute)). "To establish a claim for civil theft, a party must prove that a conversion has taken place and that the accused party acted with criminal intent." *Heldenmuth v. Groll*, 128 So.3d 895, 896 (Fla. 4th DCA 2013) (internal citations omitted). Such intent must be proven by clear and convincing evidence. *Westinghouse Elec. Corp. v. Shuler Bros., Inc.*, 590 So.2d 986, 988 (Fla. 4th DCA 1991). The existence of a contractual relationship does not conclusively establish the absence of a civil theft; however, the civil theft "must go beyond, and be independent from, a failure to comply with the terms of a contract." *Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. 3d DCA 2008). Upon such a showing, a plaintiff is entitled to threefold

the actual damages sustained in addition to reasonable attorney's fees and court costs in the trial and appellate courts. *See* Fla. Stat. § 772.11(1).

Just Toys argues that Empire cannot show that Just Toys had an intent to deprive Empire of its property, and, as the exhibits show, Just Toys believed it was dealing with Mr. Payne, thus, Empire cannot prove that Just Toys intended to deprive Empire of anything. In Empire's Second Amended Complaint, in addition to the elements of conversion discussed in the previous section, Empire alleges that it delivered the Vehicle's title to Just Toys; however, Just Toys retained the Vehicle and/or the funds from the sale of the Vehicle with the felonious intent to deprive Empire of the Vehicle's value and/or the sales proceeds[7]. Doc. 13 ¶¶ 18, 36-37. The facts are similar to *Masvidal v. Ochoa*, 505 So.2d 555 (Fla. 3d DCA 1987), where "[t]he evidence show[ed] a classic embezzlement by the defendant of an escrow fund set up under the subscription agreement between the parties." *Id.* at 555. Even though the defendant initially had lawfully obtained possession of the plaintiff's funds to set up the escrow fund, he subsequently converted the funds for his own use. The court concluded the actions of the defendant constituted a civil theft and a conversion as well as a breach of contract. *Id*. Just Toys may have initially been entitled to sell Empire's Vehicle on consignment as alleged, however, Empire contends that Just Toys had felonious intent in retaining the Vehicle and/or sales proceeds once Empire allegedly sought to terminate the consignment arrangement. *See Heldenmuth v. Groll*, 128 So.3c 895 (4th DCA 2013) (holding purchaser of real estate stated a claim for civil theft where he alleged that escrow agents had used some of the escrowed funds to purchase real property for their own use). Taking Empire's assertions as true and viewing them in a light most favorable to Empire, the Court finds that Empire

---

[7] In accordance with the civil theft statute, Fla. Stat. § 772.11, Empire forwarded a statutory demand letter to Just Toys demanding the payment of $186,000, which represents the statutory damages of three times the value of the misappropriated Vehicle or sales proceeds. Doc. 13-10.

has alleged sufficient facts to state a claim for civil theft under Fla. Stat. § 772.11(1). Thus, Just Toys' 12(b)(6) Motion to Dismiss will be denied as to the civil theft count (Count I).

### C. Unjust enrichment

Just Toys argues that Empire cannot recover under its claim for unjust enrichment because the agreement attached to the Second Amended Complaint shows that Ryan David Payne—not Empire—signed the contract and delivered the Vehicle, conferring a benefit on Just Toys. Nonetheless, an unjust enrichment claim may be pleaded in the alternative to a breach of contract claim where one of the parties asserts that the contract governing the dispute is invalid. *See Zarrella v. Pac. Life Ins. Co.*, 755 F.Supp.2d 1218, 1227–28 (S.D.Fla. 2010) (citing *In re Managed Care Litiq.*, 185 F.Supp.2d 1310, 1337–38 (S.D.Fla. 2002)). As explained in more detail above, Empire alleges that no "agreement" or contract with Just Toys exists.

"The essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *United Techs.*, 556 F.3d at 1270 (citing *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2d DCA 2006)). Empire alleges that it delivered the Vehicle it owned and the title to the Vehicle to Just Toys for Just Toys to sell the Vehicle and deliver the proceeds of the sale to Empire. Doc. 13 ¶ 67. Empire further alleges that Just Toys failed to return the Vehicle or deliver the proceeds from the sale to Empire. *Id.* ¶ 68. Empire contends that Just Toys has been unjustly enriched at the expense of Empire by the value of the Vehicle based on Just Toys' failure to return the Vehicle or the sales proceeds to Empire, and equity principles dictate that Just Toys provide Empire the value of the asset retained and/or sold. *Id.* ¶¶ 69-70.

Taking these assertions as true and viewing the facts in the light most favorable to Empire, the Court finds that Empire has alleged sufficient facts to state a claim for unjust enrichment. Thus, Just Toys' 12(b)(6) Motion to Dismiss will be denied as to the unjust enrichment claim (Count V).

D. *Fraud*

Fraud claims present an exception to the "notice" pleading standard in Federal Rule of Civil Procedure 8. Although neither party addresses it, for Empire's claims sounding in fraud, it must meet Rule 9(b)'s heightened pleading standard: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). In a cause of action for fraud, a plaintiff must show that the defendant made a false statement which the defendant intended the plaintiff to rely on and act upon. *Mettler Inc., v. Ellen Tracy, Inc.*, 648 So.2d 253, 255 (Fla. 2d DCA 1994).

As a general rule, Rule 9(b) may be satisfied if a complaint sets forth: "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011). Just Toys contends that it could not have intended that Empire rely on any statement made by Just Toys since the exhibits show that Just Toys did not know about Empire nor make any statements to Empire.

In the Second Amended Complaint, Empire alleges that Just Toys represented to Empire that a purchaser for the GTO Judge had been procured and that Empire would be paid $62,000 upon delivery of the endorsed title to the Vehicle, and relying on that representations of Just Toys, Empire delivered the endorsed title. Doc. 13 ¶¶ 45-46. However, Empire alleges, Just Toys' representations were false when made as Just Toys never intended to deliver the promised sales

proceeds to Empire, but made the false representation for the purpose of inducing Empire to deliver the endorsed title and secure the Vehicle so that Just Toys could sell the same to a third party and misappropriate the sales proceeds. *Id*. ¶¶ 47-48. In reliance on the misrepresentations, Empire acted to its detriment, and was damaged by the fraudulent misrepresentation. *Id.* ¶¶ 49-50.

Even viewing the facts in the light most favorable to Empire, the Court finds that Empire has failed to allege specific facts sufficient to state a claim for fraud. Empire has outlined an alleged scheme in general terms. Although there are exhibits which are screen shots of (unattributed) text conversations and emails between what appears to be representatives of the parties communicating about the sale price and retrieval of the Vehicle, it is not clear, in accordance with Rule 9 "precisely what statements or omissions were made in which documents or oral representations; the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; or :the content of such statements and the manner in which they misled" Empire. Accordingly, Just Toys' 12(b)(6) Motion to Dismiss will be granted in part as to the fraud claim (Count II), however, Empire will be granted leave to amend and given a final opportunity to file a third amended complaint.

### E. FDUTPA

Just Toys argues that the documents attached to Empire's Second Amended Complaint show that Mr. Payne was the person engaged in business with Just Toys, not Empire. Just Toys argues that, since it did not engage with Empire, no actions by Just Toys could have directly caused any damages to Empire. To state a claim under FDUTPA, a party must allege (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006); Fla. Stat. §§ 501.201 *et seq*. A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rollins,*

*Inc.*, 951 So.2d at 869 (internal citation and quotations omitted). "A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *See State, Office of Att'y Gen., Dept. of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So.2d 592, 598 (Fla. 1st DCA 2004).

Neither party has addressed the split of authority among the courts applying FDUTPA as to whether non-consumers such as business entities may sue for violations of the Act. *See Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 167-69 (Fla. 4th DCA 2015) (discussing cases in which courts are split as to whether an individual or business must be a "consumer" in order to bring a valid FDUTPA claim; holding that the claimant would have to prove that there was an injury or detriment *to consumers* in order to satisfy all of the elements of a FDUTPA claim, but the claimant does not have to *be* a consumer to bring the claim); *cf. Kertesz v. Net Transactions, Ltd.*, 635 F.Supp.2d 1339, 1349–50 (S.D.Fla. 2009) (holding that plaintiff, as a non-consumer, was not entitled to bring a claim for monetary damages under FDUTPA); *Goodbys Creek, LLC v. Arch Ins. Co.*, No. 307–cv947–J–33HTS, 2008 WL 2950112, at *8–9 (M.D.Fla. July 31, 2008) ("Only consumers may bring private suit under FDUTPA.").

At the very least, assuming *arguendo*[8] the Court applied the reasoning of *Caribbean Cruise Line* allowing FDUTPA claims by non-consumer business entities such as Empire, Empire would still be required to frame its allegations in terms of the "*injury or detriment to consumers*" by Just Toys' "deceptive" or "unfair" acts under the FDUTPA. *See, e.g., Caribbean Cruise Line*, 169 So.2d at 166 (holding cruise line stated a FDUTPA claim based on its allegation that the Better

---

[8] The Court would expect the appropriate level of briefing on the issue of Empire's standing under FDUTPA at the summary judgment stage. *See* Local Rule 3.01.

Business Bureau was deceptive in its practices, including representing to consumers that it had an unbiased rating/grading system and investigated businesses when it did not, and failing to inform the public that rating was influenced by whether a business had paid a sum of money for "accreditation" as part of the rating). Empire has failed to make any allegation of "an injury or detriment to consumers" in the Second Amended Complaint. Empire makes the conclusory allegations that "Just Toys' actions and representations as stated above were unfair and deceptive" and "as a direct result of Just Toys' deceptive actions, Empire was induced, tricked, and unfairly taken advantage of, causing damages." Doc. 13 ¶¶ 54-57. Such allegations do not comply with the requirements of *Twombly*, which dictates that "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

Because Empire's allegations do not state a claim for violation of FDUTPA as currently pleaded, Just Toys' 12(b)(6) Motion to Dismiss will be granted in part as to the FDUTPA claim (Count III). Empire will be granted leave to amend and given a final opportunity to file a third amended complaint.

Based on the foregoing, it is ordered as follows:

1.  Defendant Just Toys' Motion to Dismiss the Second Amended Complaint for failure to state a claim (Doc. 18) is **DENIED in part** and **GRANTED in part** as set forth above. Empire is granted leave to file a third amended complaint[9] within 14 days.

---

[9] All pleadings filed in this Court must comply with the Local Rules and are required to be double-spaced. *See* Middle District of Florida Local Rule 1.05(a).

- 18 -

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on May 1, 2018.

*[Signature]*
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record